UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEIL JAMES CHAVEZ,

    Plaintiff,

v.                                                          Case No. 1:11-cv-442
                                                               Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                    /

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on May 21, 1981 (AR 141).[1] Plaintiff alleged a disability onset date of May 1, 2004 (AR 141). He has completed two years of college (AR 152), and has had previous employment as a cook, carpet installer, irrigation installer, assembly/finishing at a door manufacturer and fire extinguisher technician (AR 147, 157-64). Plaintiff identified his disabling conditions as depression, optic neuritis, extreme fatigue, multiple sclerosis, attention deficit disorder (ADD), and spine and brain lesions (AR 146). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 22, 2010 (AR 11-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

3

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 1, 2004 and met the insured status requirements for DIB through December 31, 2009 (AR 13).  Second, the ALJ found that plaintiff had a severe impairment of multiple sclerosis (AR 13).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15).  In this regard, the ALJ specifically addressed Listings 2.02 (loss of visual acuity), 2.03 (contraction of the visual field in the better eye)[2], 2.04 (loss of visual efficiency), 11.09 (multiple sclerosis), 12.02 (organic mental disorders) and 12.04 (affective disorders)  (AR 15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and  416. 967(b). This states:

> he cannot lift and/or carry more than 20 pounds occasionally or 10 pounds frequently; sit for more than a total of six hours in an eight-hour period; stand and/or walk for more than a total of six hours in an eight-hour period; stoop, kneel, crouch, crawl, or climb stairs more than occasionally; work at unprotected heights or around dangerous machinery; use either lower extremity to operate foot controls on a constant basis; or work with significant exposure to humidity and extremes of temperature.

(AR 15).

---

[2] The court notes an apparent typographical error, with the  ALJ referring to Listing 2.03 as Listing "20.03" (AR 15).

4

At the fourth step, the ALJ found that plaintiff was capable of performing his past relevant work as a visual inspector and food preparation worker, work which "does not require performance of work-related activities precluded by his residual functional capacity" (AR 18). Although not required by the regulations to do so, the ALJ also reviewed plaintiff's claim through step five. Based upon the vocational expert's (VE's) testimony, the ALJ found that plaintiff could perform a significant number of jobs in the regional economy including: security guard (10,000 jobs); guide/usher/greeter (14,000 jobs); and assembler (54,000 jobs) (AR 19). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time through February 22, 2010 (the date of the decision) (AR 19-20).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.[3]

**A.    The ALJ did not have substantial evidence to support his finding that plaintiff could have performed substantial gainful employment.**

**B.    The ALJ committed reversible  error by failing to consider plaintiff's lack of insurance coverage as a factor in his lack of treatment.**

Plaintiff summarized his claims as follows:

> The only real question here was whether Plaintiff's testimony about his limitations was believable and congruent with the evidence. While Plaintiff did not always follow some of the treatment recommendations that were made to him, the fact remains that early on in his treatment, he was somewhat circumscribed by insurance coverage limitations.

---

[3] Plaintiff does not address his alleged mental limitations. Accordingly, the court will review his claims with respect to the physical limitations only.

Plaintiff's Brief at p. 14 (citing AR 274). Plaintiff contends that because he had difficulty in paying for treatment, "his failure to follow through with some recommendations and treatments should not be considered as a detriment to his credibility." *Id.* at p. 16.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ summarized plaintiff's disability claim as follows:

> The claimant testified that he is unable to work because of symptoms related to multiple sclerosis, primarily numbness in his right hand, leg, and foot and "sporadic" numbness in his left foot. He also reported experiencing pain in his low back and seeing "spots," which "come and go" that are due to optic neuritis. He related that his right leg is either numb or "agitated/sore" about three weeks of every month and is aggravated by prolonged standing and walking. He also stated that if

> his body "overheats," his symptoms increase. He noted that the numbness in his right hand used to be intermittent but is now constant and interferes with his using the hand for writing and holding objects as well as lifting, remarking that he is not capable of lifting a gallon of milk (approximately nine pounds) using just his right hand; he is right-hand dominant. He stated that he is able to use his right hand for typing, testifying that he is currently attending classes full-time, about eight hours per week, at a local college, but that his girlfriend usually types his papers for him. He mentioned that he can also get assistance to read his textbooks, if needed, due to his vision. He commented that he will experience pain in his eyes if he "pushes himself to read" and then a migraine develops. It was his testimony that he typically experiences migraine headaches for two weeks of every month, relating that he has a dull headache for one week and a severe headache for one week, the latter of which results in absence from his classes.

(AR 16). The ALJ noted that plaintiff was prescribed various medications to control his multiple sclerosis and related symptoms: Betaseron (injected every other day); the muscle relaxant Flexeril / Cyclobenzaprine (as needed for muscle tension, muscle pain and optic neuritis); Buproprion (anti-depressant); and Adderall (stimulant) (AR 16). Plaintiff also used marijuana about three times per week (AR 16).

In evaluating plaintiff's credibility, the ALJ found numerous discrepancies between plaintiff's alleged limitations and the evidence of those limitations. Plaintiff has alleged a disability onset date of May 1, 2004. The ALJ found that plaintiff's diagnosis of multiple sclerosis which was confirmed by magnetic resonance imaging (MRI) scans of his brain performed in July, 2005, September 2005 and September 2006 (AR 17, 242, 310, 312, 317-18). The ALJ noted, however, that the plaque formation evident in the September 2006 MRI was actually smaller than the formation identified in September 2005 (AR 17, 242, 310). The ALJ also noted the absence of significant muscle weakness, atrophy and abnormality of the joints, that plaintiff did not require an assistive device to ambulate and that there was no evidence that he was unable to ambulate effectively (AR 17). In this regard, the ALJ noted that despite plaintiff's testimony that he

experiences significant fatigue, plaintiff's 2009 function report states that he was capable of walking 1/4 mile before needing to rest and that he could lift 15 pounds (AR 17, 233). In addition, plaintiff is not prescribed any analgesic medication for pain in the back or headaches (AR 17, 215-16).

The ALJ addressed plaintiff's visual limitations as follows:

> With regard to his vision complaints, the MRI scan of his brain performed in September 2006 revealed normal optic nerves (Exhibit 1f/pp7, 10) [AR 243, 246] as did the MRI scan performed in July 2005 (Exhibit 4f/p42) [AR 318]. No diminishment of his vision was assessed when he was examined at the request and expense of the Administration in August 2007; his visual acuity measured 20/20 on the right and 20/20 on the left without corrective lenses (Exhibit 8f) [AR 390-95]. There is also indication of significant diminishment of his vision contained within the treatment notes from his medical sources at Grand Rapids Ophthalmology, which document visits from June 2005 through July 2007 (Exhibit 6f) [AR 357-84]. The claimant acknowledged at his administrative hearing that his visual disturbances occur intermittently and that, despite these, he remains able to drive and performs a considerable amount of reading on a regular basis.

(AR 17).

The ALJ reviewed plaintiff's testimony regarding his daily activities as follows:

> The claimant testified that he maintains an independent residence; he indicated that he resides in a house owned by his mother. He is able to attend to his personal needs without assistance. He reported his daily activities to consist of attending classes at a local community college as previously noted, in addition to preparing simple meals, completing any homework he may have, visiting with his girlfriend, and performing light housework such as washing dishes and laundering clothes. He testified that his girlfriend and mother will also perform household tasks for him when needed. He remains able to shop for groceries, usually doing so monthly, as well as pay bills/attend to financial matters. He stated that he sometimes drives but not often due to the problems he has with his hands, feet, and vision, and usually has his girlfriend drive. He indicated on a Function Report completed in July 2007 that he was able to use public transportation and ride a bicycle; he also reported that was able to shop and perform "low impact" tasks such as watering plants, dusting furniture, and washing dishes. He did not allege any difficulty getting along with others or responding to those in authority. He testified that he "tries" to get out to attend recreational activities but is usually "exhausted from school" and does not have the energy, remarking that his fatigue used to occur every other week and last

> for an entire day or a couple of hours but that he is now "always tired both physically and mentally" (Testimony and Exhibits 3e, 6e, 8e, 12e, and 13e).[4]

(AR 16).

> The ALJ found that while plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent alleged (AR 16).

>> Per the claimant's own testimony and admissions to various treatment providers, it clearly appears that he has maintained a significant amount of daily activities since May 1, 2004, the date he alleges an onset of disability. Of particular interest, the undersigned notes that the claimant related to nurse practitioner L. O'Donnell, R.N. in July 2009 that he was able to write and play his guitar, reporting "almost complete resolution" of the abnormal sensations and clumsiness he had been experiencing in his right hand since using Prednisone. He had also related to Ms. O'Donnell the previous month that he enjoyed golfing (Exhibit 19f/pp 1, 2) [AR 463-64], yet, it was his testimony that he has not played golf for the last two years [AR 52].

>> In addition, subsequent to May 1, 2004, the claimant has consistently indicated that he has been attending college classes fairly regularly in pursuit of a Bachelor's degree. By its nature, such an endeavor requires significant use of vision, as well as use of the hands, for reading and completing assignments. While the undersigned does not doubt that the claimant experiences occasional visual disturbances in addition to bouts of extremity numbness and fatigue related to his multiple sclerosis, treatment records clearly show that these symptoms fluctuate in intensity and are not experienced at the frequency or severity alleged at his administrative hearing. The undersigned is simply not persuaded that the record substantiates that the claimant's symptoms are experienced to such a debilitating degree as to preclude all work activity.

(AR 17-18).

> There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ has found contradictions among the medical records, plaintiff's testimony, and other

---

[4] The ALJ relied on the following testimony: plaintiff's "disability report - adult" (6/25/2007); plaintiff's "function report - adult" (7/19/2007); plaintiff's "disability report - appeal" (undated); "claimant's recent medical treatment" (undated); and plaintiff's "function report - adult" (6/18/2009) (AR 145-54, 169-87, 191-97, 214-27, and 228-35).

evidence. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. In addition, the ALJ accommodated plaintiff's symptoms in the RFC, which: limits plaintiff to light exertional work; accommodates a variety of exertional activity throughout an eight-hour period (i.e., sitting, walking and standing); requires only occasional stooping, kneeling, crouching, crawling and climbing stairs; and avoids significant exposure to humidity and extremes of temperature (AR 15).

Finally, plaintiff contends that the ALJ improperly discounted his credibility due to plaintiff's inability to pay for recommended treatments. Plaintiff's Brief at p. 16. However, it is unnecessary to address this issue. Plaintiff neither identifies where the ALJ discounts his credibility on this ground (the court finds no such statement), nor does plaintiff set forth the appropriate legal standard for evaluating such a claim. *See, e.g.*, *Strong v. Social Security Administration*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) ("The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition"). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claimed error is deemed waived.

### C. The ALJ committed reversible error by failing to consider the accurate testimony of the VE.

Plaintiff contends that the ALJ should not have relied on the VE's testimony, because that testimony was based upon inaccurate hypothetical questions. Plaintiff's Brief at pp. 16-17. Plaintiff was found not disabled at step four of the sequential evaluation because he could perform his past relevant work as a visual inspector and food preparation worker. While the ALJ proceeded

to step five of the sequential evaluation, his additional findings were not necessary to resolve plaintiff's claim.

In *D'Angelo v. Commissioner of Social Security*, 475 F.Supp.2d 716 (W.D.Mich. 2007), this court addressed the ALJ's use of VE testimony to assist in determining whether a claimant can perform his or her past relevant work:

> It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1565.
>
> A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir.1991); *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421 (D.Del.2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

*D'Angelo*, 475 F.Supp.2d at 723-24.

Here, the ALJ posed a hypothetical question to the VE which included the limitations as set forth in the RFC (AR 54). Based on this record, the ALJ's RFC determination is supported by substantial evidence. In response to the hypothetical question, the VE testified that a person with that RFC could perform plaintiff's past relevant work as a visual inspector and food preparation

11

worker (AR 54). The hypothetical question posed to the VE accurately portrayed plaintiff's limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004) (evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations). Accordingly, the ALJ could rely on the VE's response, along with the other evidence in the record, in determining that plaintiff could perform his past relevant work.

Finally, plaintiff contends that the ALJ should have adopted other portions of the VE's testimony. Specifically, plaintiff points out the VE's testimony that plaintiff's past relevant work in food preparation would be precluded by his inability to use his right arm for rapid and fine manipulation, but that this limitation would not have precluded his other past relevant work as a visual inspector, other employment as a security guard, guide, usher, aide or greeter (AR 55); that if an individual was able to stand and walk no more than two out of eight hours, then such a limitation "would preclude all of these jobs") (AR 55); that if the hypothetical person had "not sustained fine vision," then that limitation would preclude the identified jobs at the light and sedentary exertional levels (AR 54-55); that if a person missed more than two or three weeks in a six month period there "may be a problem" in the job market (AR 56); and that missing more than one day a month would be work preclusive (AR 57). The additional questions posed and the VE's testimony raised a number of scenarios which involved a hypothetical individual's ability to perform plaintiff's past relevant work as well as the ability to perform other work. Plaintiff, however, does not address these additional hypothetical questions in detail, simply stating that "when accurate hypothetical questions were asked which considered the inconsistent nature of Plaintiff's symptoms, the expert said that Plaintiff could not work ([AR] 54-57)." Plaintiff's Brief


at p. 17. Plaintiff's conclusory statements are insufficient to raise an issue on appeal. Accordingly, the court views this challenge waived. *See McPherson*, 125 F.3d at 995-96.

### IV. CONCLUSION

The ALJ's determination that plaintiff could perform his past relevant work as a visual inspector and food preparation worker is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: September 13, 2012                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge